## TEXTILE MACHINE WORKS v. HOFMANN et al.

### No. 4219.

District Court, D. New Jersey.

Oct. 16, 1933.

Howson & Howson, of Philadelphia, Pa., for plaintiff.

Darby & Darby, of New York City, for defendants.

AVIS, District Judge.

The bill of complaint in this cause alleges that the plaintiff is the owner of a certain patent, No. 1,713,628, issued to Richard E. Schletter on May 21, 1929, covering an attachment for flat knitting machines for the making of hosiery of full-fashioned type, especially adapted for making clocks, reinforcing, split seam work, splicing, etc.; that defendants have infringed the patent by the use of the appliances patented in an attachment sold and marketed by them; and prays for relief by injunction and accounting.

The answer admits the issuance of the patent, but denies that Schletter was the inventor of the improvements in the attachments for flat knitting machines, described in the letters patent and the other claims set forth in the bill of complaint, and affirmatively avers that Schletter had abandoned his invention, and did not assert any claim thereto until after others had independently made large investments in connection with the manufacture and sale to the public in the United States of attachments embodying his claimed invention; that plaintiff was and is barred by his abandonment of a prior application; that Schletter was not the inventor, and was barred by anticipation in sundry other patents, and by

prior use by others. The answer further sets up various patents issued in the United States, Great Britain, Germany, and France, various publications and users, claiming them to be a complete bar to plaintiff's right to an exclusive use of the attachment.

Based on these various allegations of fact, the answer claims that because of the state of the art as known at the time and prior thereto, the alleged invention or discovery did not involve invention, but exhibited nothing more than the exercise of mere mechanical skill.

At the opening of the trial, the bill of complaint against Alfred Hofmann, as an individual, was dismissed on motion of defendant's counsel, and with the consent of counsel for plaintiff.

The claimed invention is a machine which can be attached to, or built with, a flat or straight hosiery knitting machine, used for the purpose of making full-fashioned stockings.

The basic knitting machine is constructed under the original "Cotton" invention, with such changes and improvements as have been made from time to time. The knitting is accomplished by a battery of straight needles operating with sinkers, dividers, etc., and by various forms of mechanism provided with power through arms, gears, slur cocks, carrier bars, shafts, rollers, clutches, cams, etc., and actuated by power transmitted from what is known as the cam shaft. Attached to these machines is a mechanical contrivance, called a narrowing device, by which the full-fashioned stocking is made.

A full description of the operation of this full-fashioned knitting machine, as detailed by the witnesses, does not appear to the court to be necessary in the decision of the question at issue. It is sufficient to say that the operations of the machine are complicated, and by co-operation of all of its parts turns out a perfect product.

For the purpose of laying the thread for contact with the needles and attachments required to tie the knots and do the knitting, longitudinal reciprocating yarn guide carrier bars are arranged on the machines, their movements in both directions controlled by stops, so that the thread will be laid and knitted the required width of the material to be produced. The width of the main material is controlled by stops arranged at either end of the plurality of knitting sections, in which form the machines are usually assembled in practical operation. For the purpose of narrowing the fabric as desired, and prior to plaintiff's claimed invention, reversely thread-ed spindles were attached to each end of the plurality of machines, which operated by a pattern chain and buttons connected therewith, caused the stops to move inward toward each other, and in conjunction with a device which removed the threads from the outer needles, replacing them on the immediately adjoining needles, accomplished the narrowing and thus formed the full-fashioned stocking, made to conform to the natural shape of the leg.

As new styles of hosiery were demanded by the purchasing public, the art advanced to meet the demand, and new attachments were added to accomplish split seam work, selvage reinforcement, splicing, onyx and pointed heels, shadow clock work, etc.

The attachments were so contrived as to lay threads from the yarn carrier bars, on the needles, with a stroke less than those carrying threads for the main material, and in co-operation with the main thread carriers, to accomplish the splicing, clock work, reinforcing, etc.

These various attachments, invented and used prior to the attachment represented by the patent in suit, have been demonstrated and described by sundry witnesses.

By manual manipulation of some character, they produced nearly or fully the same result as can be produced by plaintiff's attachment.

The plaintiff's patent describes a claimed new development, which consists of a connected reversely threaded screw spindle, which may be located on a knitting machine individually or at some point in a plurality of machines, with nuts mounted thereon, being stationed one on the right side and one on the left side of the screw, and spaced apart at such distance as may be desired; upon the rotation of the spindle in one direction, the nuts are brought closer together, and when operated in the other direction the distance between the nuts is widened. Attached to the nuts are tiltable stops, intended to limit the stroke of certain of the yarn carrier bars, by means of certain stationary lugs fastened to the bars, thus laying the additional thread on the needles at such point within the length or width of the material being knitted as may be desired, and producing splicing, reinforcing, clocks, or other inserts.

In addition, the patent contemplated the automatic control of movement of the reversely threaded spindle, so that by means of levers, pattern chains, pawls and ratchets, mechanically connected with the main cam shaft, the spindle may remain stationary or be re-

volved in either direction, causing the nuts to approach or recede from each other, and produce any desired pattern.

A further description, in this opinion, of the mechanism involved, appears to be unnecessary.

This suit involves five claims of the patent, which are as follows:

"1. In a straight knitting machine having cooperating yarn guide carrier bars, a pair of opposed stops for certain of said carrier bars which have a stroke less than the full width of the fabric being knitted, and a reversely threaded spindle for moving said stops toward and from each other to vary the stroke of the bars controlled by said stops.

"2. In a straight knitting machine having cooperating reciprocatory yarn guide carrier bars, a reversely threaded spindle, stops connected to the spindle positioned to limit the traverse of certain of the cooperating carrier bars to less than the full width of the cloth being knitted, and pattern controlled means for turning said spindle to vary the distance between said stops.

"3. A device as in claim 2, said pattern controlled means being constructed and arranged to turn said spindle either to increase or to decrease the distance between said stops.

"14. In a straight knitting machine, a set of yarn guide carrier bars for operating yarn guides traveling less than the full width of the fabric being knitted, a spindle having reversed screw threads, stops operated by said spindle, means for turning the spindle in either direction, pattern-controlled means for determining the time of operation of the spindle, and pattern-controlled means for determining the direction of rotation of the spindle.

"15. In a straight knitting machine, a set of reciprocating yarn guide carrier bars including bars having a stroke less than the width of the fabric being knitted, pair of stops for said guides, a reversely threaded spindle extending lengthwise of the machine, the respective stops being connected to the reversely threaded portion of the spindle for moving the stops simultaneously toward and from each other, pattern controlled means for determining the time for such movement, and correlated pattern controlled means for independently determining the direction of such movement."

Defendant admits that if the patent is valid it has infringed, but sets up four reasons which it claims demonstrates the invalidity of the patent:

1. Because of insufficiency and inoperability of disclosure.

The disclosure of the drawings showed some deficiency in the imparting of motion to one of the pawls, intended to work one of the ratchets, which imparts motion to the reversely threaded spindle, but it appeared by the testimony that although this condition existed in the drawing, it required merely a matter of mechanical skill to arrange a lever or other mechanism, to be actuated by the cam shaft, to accomplish the result intended. It is apparent that if mechanism could be and was constructed, so as to automatically revolve the spindle in one direction, it would not be mechanically difficult to actuate the pawl which was to revolve the spindle in the other direction.

The explanation contained in the patent, describing its operation and general method of imparting the power, in my opinion, overcomes the defect appearing in the illustration. This objection does not refer to the idea, but only to putting that idea into effect, which, it appears to me, is not a material defect.

2. Because of want of patentable novelty and complete anticipation.

It is true that the advance in the art, if any, as accomplished by Schletter in this patent, as we view it now after seeing the attachment operate and the result of its operation, seems simple, and appeals to one as exhibiting merely the result of mechanical skill, but, notwithstanding the fact that the so-called "Gotham" attachment interposed as an anticipation, and which of all offered most nearly coincides with plaintiff's patent, had been used for possibly ten years, no one before Schletter had conceived the idea, that by simply providing a pawl and ratchet which would operate the spindle in the opposite direction a great advance would be accomplished. He apparently thought of this as an advance in the art, and set to work to accomplish it, by arranging automatic means, so that the spindle would remain stationary, or could be operated in either direction automatically, and by predetermined pattern arrangement.

In my opinion, it has patentable novelty, and is an advance in the art over the so-called "Gotham" attachment, which automatically caused the nuts to move in one direction only, requiring the use of manual power to widen the distance between the nuts, or to revolve the spindle in an opposite direction. The last-named attachment could not automatically vary the width of the clock or splice.

While the patent in suit combines much of the prior art, it describes and discloses an

attachment which, applied to flat or straight full-fashioned knitting machines, and used for the purpose of splicing, reinforcing, etc., accomplishes its purpose in a different manner, and, as applied to the manufacture of hosiery, is a decided advance in the art, performing its function more expeditiously than any contrivance or attachment previously used.

See Diamond Rubber Company v. Consolidated Rubber Tire Company, 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co. (C. C. A. 8) 106 F. 693; Krauth v. Autographic Register Co. (D. C. N. J.) 285 F. 199, 204.

■ There is a presumption of the validity of a duly issued patent, and an evidence of the advance of the invention of Schletter over the prior art is the popularity of the attachment, the large sales, and the fact that defendant appears to be anxious to use it as an attachment to its flat hosiery knitting machines.

See Kinloch Tel. Co. v. Western Electric Co. (C. C. A. 8) 113 F. 659–665.

What has been said applies also to the contention of defendant as to "complete anticipation." It is impossible in this opinion to analyze all of the patents presented, and about which testimony has been offered; suffice it to say that the court has scrutinized the testimony, carefully read the briefs, and has concluded that none of the prior patents is anticipatory of the claims of plaintiff at issue in this suit.

3. The contentions of defendant because of prior knowledge and use are, as the court views all of the testimony, also disposed of herein.

While the plaintiff's attachment in a degree is evolved from the uses of former and other devices attached to flat knitting full-fashioned machines, the question is the novelty of plaintiff's patent of furnishing, as stated in defendant's brief, "the necessary mechanism for automatically imparting reverse motion to the spindle of the Gotham attachment."

Of course, this included the mechanism which reverses and advances the nuts and stops in a predetermined manner by use of pattern chains, or other automatic mechanical means.

■ 4. The question of abandonment has been raised by defendant and is based upon the assumption that the facts indicate that Schletter intentionally abandoned his invention to the public.

The failure to prosecute the proceedings under the original application for patent appears to have been due entirely to the negligence of the patent attorney.

There is no indication in the evidence that Schletter ever voluntarily intended to abandon his invention.

From the testimony it is evident that Schletter never knew of the letter of rejection until long after it was received by his attorney. The letter was received by the attorney on or about April 18, 1923, and Schletter was not notified until July 28, 1924.

The attorney testified that at a conference held August 5, 1924, with Schletter and others, no suggestion was made by him that the original application had been technically abandoned. After this conference the attorney made no effort to revive the application, and it is apparent that later, Schletter, becoming discouraged because of lack of action, consulted another patent attorney, who, on or about May 20, 1925, wrote to the attorney handling the original application for information.

The filing of the second application was considerably delayed because of the tardiness of the draughtsman.

There seems to have been much uncalled for neglect and delay, but the testimony is quite clear that none of this was chargeable to Schletter personally.

I am convinced that Schletter never, by his actions, abandoned his invention, and the claim of abandonment cannot succeed in denying relief to plaintiff.

I find as facts:

(1) That claims 1, 3, 14, and 15 of the patent in question are valid.

(2) That said claims of patent are not anticipated by patents pleaded and offered in evidence, or voided by prior knowledge or use.

(3) That patentee Schletter did not voluntarily or intentionally abandon the invention as disclosed by the original patent application.

(4) That the defendant Alfred Hofmann, Inc., has infringed the aforesaid claims of the patent.

As to the law, I conclude: That the patent being valid and infringed, the plaintiff is entitled to a decree enjoining defendant Alfred Hofmann, Inc., from the use of the at-

tachment so infringing, and for an accounting for damages and profits

Decree accordingly.